STATE OF WISCONSIN        CIRCUIT COURT        SHEBOYGAN COUNTY

NATIONAL EXCHANGE BANK AND TRUST,

        Plaintiff,

v.        **Case No. 2010 CV 000514**
        Case Code Nos: 30301, 30404

WINDRIDGE CO. f/k/a Windridge Homes, Inc.,
WDG Company f/k/a Windridge Group Corporation,
HUGH JOEL BOYD,
STEPHEN G. BOYD,
JACQUELINE LEE BOYD, and
JAN M. BOYD,

        Defendants.

## AMENDED ANSWER AND AMENDED AFFIRMATIVE DEFENSES TO PLAINTIFFS COMPLAINT BY DEFENDANTS AND COUNTERCLAIM AGAINST PLAINTIFF BY ALL DEFENDANTS

### ANSWER

Now Come the above-named Defendants Windridge Co. f/k/a Windridge Homes, Inc. ("Windridge"), WDG Company f/k/a Windridge Group Corporation ("WDG"), Hugh Joel Boyd, Stephen G. Boyd, Jacqueline Lee Boyd, and Jan M. Boyd by their attorneys Peter R. Mayer of Mayer Law Firm, S. C. and Stephen M Seymour, as and for their answer and affirmative defenses to the complaint of Plaintiff National Exchange Bank and Trust ("NEBAT") and state and allege as follows:

    1-7.    Answering paragraphs 1-7, Defendants admit the allegations contained therein.

    8.    In response to paragraph 8, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

    9.    In response to paragraph 9, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

1
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Case 2:11-cv-00035-LA   Filed 01/13/11   Page 1 of 13   Document 3

10-11. In response to paragraphs 10 and 11, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

12. In response to paragraph 12, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

13-14. In response to paragraphs 13 and 14, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

15. In response to paragraph 15, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

16-17. In response to paragraphs 16 and 17, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

18. Answering paragraph 18, Defendants deny the allegations contained therein, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

19. In response to paragraph 19, Defendants deny the allegations that they have failed and refused to pay the amounts due and with respect to the remainder of paragraph 19 Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

20-21. In response to paragraphs 20 and 21, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

22. Answering paragraph 22, Defendants deny the allegations contained therein, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

23. In response to paragraph 23, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put

Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

24. In response to paragraph 24, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

25. Answering paragraph 25, Defendants admit the allegations contained therein.

26. In response to paragraph 26, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

27. In response to paragraph 27, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

28-29. In response to paragraphs 28 and 29, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

30. Answering paragraph 30, Defendants deny the allegations contained therein, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

31. In response to paragraph 31, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

32-33. In response to paragraphs 32 and 33, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

34. Answering paragraph 34, Defendants deny the allegations contained therein, and Defendants affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

35. In response to paragraph 35, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof, and Defendants affirmatively allege that NEBAT has failed and refused

to accept payments in a manner consistent with the pattern and practice developed between the parties.

36. In response to paragraph 36, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

37. Answering paragraph 37, Defendants admit the allegations contained therein.

38-47. In response to paragraphs 38-47, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

48. Answering paragraph 48, Defendants admit the allegations contained therein.

49-52. In response to paragraphs 49-52, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

53. Answering paragraph 53, Defendants admit the allegations contained therein.

54. Answering paragraph 54, Defendants deny the allegations contained therein and affirmatively allege upon information and belief that Windridge and WDG were not authorized to enter into such Agreement for Cross-Collateral, that such agreement was signed contrary to other agreements with NEBAT, and that NEBAT should be estopped from enforcement of or any right created by such agreement.

55-56. In response to paragraphs 55 and 56, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

57. Answering paragraph 57, Defendants deny the allegations contained therein and affirmatively allege upon information and belief that Windridge and WDG were not authorized to enter into such Agreement for Cross-Collateral, that such agreement was signed contrary to other agreements with NEBAT, and that NEBAT should be estopped from enforcement of or any right created by such agreement.

58-72. In response to paragraphs 58-72, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

## ANSWER TO FIRST CAUSE OF ACTION — MONEY JUDGMENT AGAINST WINDRIDGE ON THE WINDRIDGE NOTES

73. Answering paragraph 73, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-72 of the Complaint.

74. In response to paragraph 74, Defendant Windridge admits it is liable to NEBAT, but Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

75. Answering paragraph 75, Defendants deny the allegations contained therein.

76. Answering paragraph 76, Defendants deny the allegations contained therein and affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

77. Answering paragraph 77, Defendants deny the allegations contained therein.

## ANSWER TO SECOND CAUSE OF ACTION — MONEY JUDGMENT AGAINST WDG ON THE WDG NOTES

78. Answering paragraph 78, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-77 of the Complaint.

79. In response to paragraph 79, Defendant WDG admits it is liable to NEBAT, but Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

80. Answering paragraph 80, Defendants deny the allegations contained therein.

81. Answering paragraph 81, Defendants deny the allegations contained therein and affirmatively allege that NEBAT has failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

82. Answering paragraph 82, Defendants deny the allegations contained therein.

## ANSWER TO THIRD CAUSE OF ACTION — MONEY JUDGMENT AGAINST WINDRIDGE ON THE WINDRIDGE CORPORATE GUARANTY

83. Answering paragraph 83, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-82 of the Complaint.

84. In response to paragraph 84, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

85. Answering paragraph 85, Defendants deny the allegations contained therein.

86. Answering paragraph 86, Defendants deny the allegations contained therein.

ANSWER TO FOURTH CAUSE OF ACTION — MONEY JUDGMENT AGAINST WDG ON THE WDG CORPORATE GUARANTY

87. Answering paragraph 87, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-86 of the Complaint.

88. In response to paragraph 88, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

89. Answering paragraph 89, Defendants deny the allegations contained therein.

90. Answering paragraph 90, Defendants deny the allegations contained therein.

ANSWER TO FIFTH CAUSE OF ACTION — JUDGMENT OF FORECLOSURE ON THE WINDRIDGE MORTGAGES

91. Answering paragraph 91, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-90 of the Complaint.

92-93. In response to paragraphs 92 and 93, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

94. Answering paragraph 94, Defendants deny the allegations contained therein.

95. Answering paragraph 95, Defendants deny the allegations contained therein and affirmatively allege upon information and belief that Windridge and WDG were not authorized to enter into such Agreement for Cross-Collateral, that such agreement was signed contrary to other agreements with NEBAT, and that NEBAT should be estopped from enforcement of or any right created by such agreement.

96-97. In response to paragraphs 96 and 97, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

## ANSWER TO SIXTH CAUSE OF ACTION — JUDGMENT OF FORECLOSURE ON THE WDG MORTGAGES

98. Answering paragraph 98, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-97 of the Complaint.

99-100. In response to paragraphs 99 and 100, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

101. Answering paragraph 101, Defendants deny the allegations contained therein.

102. Answering paragraph 102, Defendants deny the allegations contained therein and affirmatively allege upon information and belief that Windridge and WDG were not authorized to enter into such Agreement for Cross-Collateral, that such agreement was signed contrary to other agreements with NEBAT, and that NEBAT should be estopped from enforcement of or any right created by such agreement.

103-104. In response to paragraphs 103 and 104, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

## ANSWER TO SEVENTH CAUSE OF ACTION — REPLEVIN OF COLLATERAL

105. Answering paragraph 105, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-104 of the Complaint.

106-108. In response to paragraphs 106-108, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

109. Answering paragraph 109, Defendants deny the allegations contained therein.

## ANSWER TO EIGHTH CAUSE OF ACTION — MONEY JUDGMENT ON THE STEPHEN BOYD GUARANTIES

110. Answering paragraph 110, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-109 of the Complaint.

111. In response to paragraph 111, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

112-114.   Answering paragraphs 112-114, Defendants deny the allegations contained therein.

## ANSWER TO NINTH CAUSE OF ACTION — MONEY JUDGMENT ON THE JOEL BOYD GUARANTIES

115.   Answering paragraph 115, Defendants reallege and incorporate by this reference all of the previous and subsequent admissions, denials, and statements contained in this Answer, including without limitation those made in reference to paragraphs 1-114 of the Complaint.

116.   In response to paragraph 116, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations therein, and accordingly deny the same and put Plaintiff to its proof thereof.

117-119.   Answering paragraphs 117-119, Defendants deny the allegations contained therein.

## **AFFIRMATIVE DEFENSES OF DEFENDANTS TO COMPLAINT**

As affirmative defenses to the Complaint, Defendants, by their attorney, state as follows:

120.   The claims of the Plaintiff are barred by the doctrine of estoppel.

121.   The claims of the Plaintiff are barred since Plaintiff failed and refused to accept payments in a manner consistent with the pattern and practice developed between the parties.

122.   The claims of the Plaintiff are barred and untimely since, upon information and belief, Plaintiff failed to provide the required notice of default.

123.   In addition to the preceding affirmative defenses, upon information and belief, Defendants affirmatively allege (1) that the Complaint fails to state a claim upon which relief can be granted; (2) that the complaint fails to state any claim or cause of action against Defendants; (3) that the Plaintiffs have failed to join a necessary party; and (4) the applicable statute of limitations bars some or all of the Plaintiffs claims.

124.   For the reasons described in detail in defendants' Counterclaim, Plaintiff NEBAT's misconduct relating to the contracts sued upon renders these contracts null and void and discharges Defendants from all liability under these contracts. NEBAT breached the covenant of good faith and fair dealing; it brought this lawsuit against the Defendants with unclean hands; and it is equitably estopped from asserting claims against the Defendants. NEBAT's alleged damages also are the result of its own acts or omissions in, among other things, failing to disburse loan funds on a timely basis consistent with construction progress, failing to disburse loan funds for the payment of accrued interest and loan payments, and refusing to renew the loans made to Defendants despite its past patterns of practice of (1) paying loan funds in a timely manner to reimburse construction cost advances made by defendants Windridge and WDG, (2) allowing defendants Windridge and WDG

to take draws on loans for the payment of accrued interest and loan payments, and (3) renewing loans based upon the submitted pro-forma schedule; and in making these loans on certain properties with full knowledge based upon the pro-formas submitted as a part of the loan documentation that these properties were not purchased as income producing, as-is properties, and that the value of these properties rested entirely in the Defendants' ability to develop the properties with residential construction loans and the continuation of further loan extensions consistent with the submitted pro-forma schedule that Defendants reasonably expected.

125. The contracts sued upon are unenforceable due to unconscionability.

126. The contracts sued upon were entered into as a result of economic duress.

127. The terms of the underlying contracts were materially changed without the informed consent of the alleged guarantors, thereby releasing any alleged guarantors.

128. Plaintiff has failed to mitigate its damages, if any.

129. Defendants reserve the right to raise additional affirmative defenses which they may later become aware of.

## COUNTERCLAIM AGAINST PLAINTIFF BY ALL DEFENDANTS

130. Defendants reallege, reiterate, and incorporate by reference their answers to the Complaint and Affirmative Defenses.

131. Because of National Exchange Bank and Trust's ("NEBAT") gross misconduct in failing to disburse loan funds on a timely basis consistent with construction progress, failing to disburse loan funds for the payment of accrued interest and loan payments, and refusing to renew the loans made to Defendants Windridge Co. f/k/a Windridge Homes, Inc. ("Windridge") and WDG Company f/k/a Windridge Group Corporation ("WDG") despite its past patterns of practice of (1) paying loan funds in a timely manner to reimburse construction cost advances made by defendants Windridge and WDG, (2) allowing defendants Windridge and WDG to take draws on loans for the payment of accrued interest and loan payments, and (3) renewing loans based upon the submitted pro-forma schedule, and calling all loans due prior to maturity even though Defendants were or could have been current, Defendants are discharged from all liability under the contracts sued upon here. Defendants seek a declaration rendering the contracts null and void and discharging them from liability under these contracts, and they seek damages resulting from NEBAT's bad faith breach of these contracts.

A. Background Of The Lending Relationships.

132. NEBAT and the Defendants have had a significant, longstanding, and special lending relationship for at least sixteen (16) years. This relationship has included various development projects resulting in Windridge and WDG being one of NEBAT's largest customers and during at least the last ten (10) years, NEBAT being the only commercial lender to Windridge and WDG. As

this relationship is outlined below, it is not difficult for one to discern why Defendants reasonably relied on NEBAT's actions establishing that Defendants could expect the lending relationship to continue.

133. As loans owed by Windridge and WDG became due, as a matter of practice, NEBAT's officers sent loan renewal packages to Defendants, sometime without request, on occasion with proposals for increased borrowing by Defendants from NEBAT, and on occasion with no more explanation from the officers of NEBAT than a post-it note.

134. NEBAT did not require as a part of any loan to Defendants that Defendants restrict, limit or prohibit compensation to employees, officers, shareholders or members, did not restrict, limit or prohibit distributions from Windridge or WDG, and did not restrict, limit or prohibit payments of the note owed by WDG to Joel Boyd.

135. NEBAT did not require personal guarantees by Defendants Jacqueline Lee Boyd and Jan M. Boyd.

136. NEBAT did not require mortgages on the personal residences of Defendants.

137. NEBAT provided construction loans to Defendants to enable Defendants to sell lots and build residences upon the lots. NEBAT established a process for disbursing funds on the loans in an ordinary and customary basis as construction proceeded.

138. NEBAT allowed Defendants to take draws as reimbursement of construction contract costs and expenses and to use undisbursed loan funds for the making of any interest or other payments to NEBAT.

139. NEBAT gave approval for a loan for Mueller Field, which approval provided loan funds for the purchase price of the land. When NEBAT did not disburse the funds for the purchase of the land, Defendant Joel Boyd provided the funds and in exchange obtained a promissory note from WDG, which note was later repaid by WDG since NEBAT had no restrictions or prohibitions against loan repayment or covenants prohibiting distributions from WDG.

140. In the process of reviewing the loan for the development known as WindMor, NEBAT obtained an appraisal to determine the value. In order to determine the value of the WindMor property, NEBAT's appraiser requested and obtained an extra-ordinary and inappropriately substantial amount of assistance and information on the value of the property from the Vice President of Operations for Windridge and WDG, resulting in an appraisal which was not independent and was flawed and of uncertain validity.

141. Defendants requested a loan for WindMor in the amount of approximately $4,500,000.00.

10
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Case 2:11-cv-00035-LA   Filed 01/13/11   Page 10 of 13   Document 3

142. Peter Stone, CEO of Plaintiff NEBAT, encouraged, instructed, and advised Defendants to obtain a loan for the WindMor development in the amount of $5,000,000.00, despite Defendants request for a lesser amount.

B.  NEBAT Breaks the Loan Commitment and Alters Its Funding and Payment Requirements.

143. Despite having a written loan commitment letter for financing for the WindMor development project, which did not require a cross collateral agreement and on the eve of closing at a time when the seller of the WindMor property would have had a legal right to terminate the contract and indicated that he would do so in the event that Defendants did not close the transaction, and after NEBAT encouraged, instructed, and advised Defendants to obtain a loan for more money than requested, based upon an appraisal which was not independent and was flawed and of uncertain validity, NEBAT altered the terms of the loan agreement and required Defendants to sign a cross collateral agreement.

144. At the time that the loans were applied for, NEBAT received and reviewed pro formas which confirmed that loans would have to be extended or renewed by NEBAT in order to be repaid. At no time prior to Winter of 2008/2009 did NEBAT leave Defendants with any expectation other than the renewal of the loans.

145. In the Winter of 2008/2009, NEBAT required Defendants to reduce a loan by making a payment to NEBAT in the amount of $175,000.00, which was not a requirement of the loan.

146. After Winter of 2008/2009, NEBAT altered its past practice and prevented Defendants from taking construction draws on a timely basis and prevented Defendants from using undisbursed loan funds for the making of interest payments and other payments to NEBAT. NEBAT improperly denied and delayed draw requests made by Defendants.

C.  NEBAT Refuses To Extend The Lending Relationship Despite Its Practices.

147. In 2009, at a time when Defendants were not in default of any of the loans, NEBAT improperly informed Defendants that Defendants would have to make a payment to NEBAT of $200,000.00, which was not a requirement of the loans, in order to continue the banking relationship.

148. In 2009, at a at a time when Defendants were not in default of any payments due under the loans and prior to the maturity date of most of the loans, NEBAT refused to accept the loan renewals signed by Defendants, which had previously been submitted to Defendants by NEBAT.

149. Subsequent to this time, NEBAT has acted in bad faith in at least the following ways:

a. NEBAT acted in bad faith when it refused to extend the loans on terms similar to the previous extensions, despite its past pattern and practice of extending each loan. The only true default cited by NEBAT is that Defendants failed to pay the entire principal balance and accrued interest on or before the maturity date of the notes. NEBAT held itself out to be a functioning, strong bank capable of accepting the risks of its ventures. In fact, in usual course of business and as expected by

Defendants, the loan was expected to be renewed, but NEBAT could not renew this entrepreneurial loan, not because the individuals are not creditworthy, but because NEBAT radically changed its lending practices due to its own business issues based on factors that did not involve the Defendants. NEBAT misrepresented that it would continue to transact business like it always did, which the Defendants relied on in not only making the original notes, but in expecting the notes to be renewed.

b.  NEBAT made loans to the Defendants for the real estate developments based upon pro formas with full knowledge that these were not purchased as income producing, as-is properties, and that the value of these properties rested entirely in the defendants' ability to develop the sites, sell lots over time, and build houses upon them. When NEBAT refused to extend the loans or failed to disburse previously authorized funds on a timely basis, this disabled the Defendants from being able to pursue the developments, which was the very purpose for which the loans were given. Defendants were at all times, and are still, ready willing and able to work on development of these properties.

c.  The Defendants have approached NEBAT with different ideas on how to develop the sites, attract additional investors, or sell the sites altogether.

d.  NEBAT's failure to make timely construction draw payments has resulted in Defendants inability to complete construction projects on time.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF: DECLARATORY JUDGMENT

150.  Defendants incorporate herein by reference the preceding paragraphs of this pleading.

151.  Defendants seek a declaratory judgment declaring that the contracts on which Plaintiff bases its lawsuit are null and void, and that Defendants are discharged from any and all liability pursuant to these contracts. As set forth in detail herein, Plaintiff's gross misconduct breached its duty of good faith and fair dealing owed to Defendants. Plaintiff brings its lawsuit against Defendants with unclean hands, and it is equitably estopped from proceeding with this lawsuit. Defendants seek a declaratory judgment discharging them from all liability under the contracts.

### SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT

152.  Defendants incorporate herein by reference the preceding paragraphs of this pleading.

153.  Plaintiffs bad faith actions as described herein breeched the terms of the that are being sued upon thereby entitling defendants to all damages they have incurred stemming from plaintiffs breach.

### THIRD CLAIM FOR RELIEF:
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

154.  Defendants incorporate herein by reference the preceding paragraphs of this pleading.

155. Plaintiff and Defendants entered into contractual relationships with each other, wherein an implied covenant of good faith and fair dealing was automatically incorporated as a term.

156. Plaintiff, through the conduct described herein, failed to exercise good faith in the performance, enforcement, or carrying out of the terms of one or more of its contracts with Defendants.

157. Through its conduct, Plaintiff failed to endeavor to accomplish the objectives of the contract(s).

158. Plaintiff breached its duty of good faith and fair dealing implied in every contract in Wisconsin.

159. Defendants suffered damages as a result of plaintiff's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

WHEREFORE, the Defendants request judgement as follows:

A. For dismissal of the Claims;

B. For the costs, disbursements, disbursements, expenses, and attorney fees of this action as provided by law;

C. For a declaration that Defendants are discharged from any and all liability under the contracts sued upon;

D. For an award of damages for Plaintiff's breach of the contracts sued upon and breach of the implied covenant of good faith and fair dealing;

E. For such other and further relief as the Court deems just and proper.

Dated this 7th day of September, 2010.

MAYER LAW FIRM, S. C.

By _____
Peter R. Mayer
State Bar No. 1009680
Attorney for Defendants Windridge Co., WDG Company, Hugh Joel Boyd, Stephen G. Boyd, Jacqueline Lee Boyd, and Jan M. Boyd

Mayer Law Firm, S. C.
909 North 8th Street, Suite 120
P. O. Box 1006
Sheboygan, WI 53082-1006
Telephone (920) 980-8241
Facsimile (920) 451-0500